# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

**J. HOWARD MARSHALL**
   **et ux.**

   Debtors.

Case No. LA 02-30769 SB

CHAPTER 11

**AMENDED OPINION
ON RECUSAL
AND REASSIGNMENT**

DATE:     October 29, 2003
TIME:     11:00 A.M.
CTRM.:    1575 (Roybal)



1

## I. INTRODUCTION

Pierce Marshall ("Pierce") brings this motion for reassignment or recusal as to this entire bankruptcy case, which was filed voluntarily by his brother J. Howard Marshall ("Howard") and his wife.[1] The court denies both branches of the motion.

## II. RELEVANT FACTS

Howard and his wife Ilene filed this voluntary chapter 11 bankruptcy case on July 23, 2002. They scheduled Pierce as a disputed creditor in the amount of $12 million. This debt resulted from a monetary judgment that Pierce obtained against Howard in the Texas probate case for their father J. Howard Marshall II ("J. Howard"). Howard suffered this judgment after he unsuccessfully contested Pierce's receiving all of their father's assets pursuant to the applicable will and family trust.

Pierce appeared in this court in the well-publicized chapter 11 case filed by their late father's third wife Vickie Marshall ("Vickie"). In an adversary proceeding in that case, this court awarded summary judgment against Pierce on his claim against Vickie's estate for defamation. The court also awarded judgment in Vickie's favor after trial in the amount of $449,754,134 plus punitive damages of $25 million. This judgment was based on Vickie's claim that Pierce tortiously interfered with her expectancy of a gift from her late husband. See Marshall v. Marshall (In re Marshall), 253 B.R. 550 (Bankr. C.D. Cal. 2000). On trial de novo, the district court increased the punitive damages to $44.3 million and remeasured the compensatory damages at $44.3 million. See Marshall v. Marshall (In re Marshall), 275 B.R. 5 (C.D. Cal. 2002).

In that adversary proceeding, this court sanctioned Pierce for destroying records subject to pending discovery requests, refusing to provide discovery and disobeying discovery orders. The final judgment as to liability was based in part on Pierce's refusal to provide discovery. In the trial de novo in the district court, Pierce produced the documents at issue. After trial, the district court found:

> The level of misconduct is far worse than even the bankruptcy court, which awarded $25 million in punitive damages, believed was present. . . . Only because the Court recognizes that the amount of punitive damages must have a rational nexus to the actual damages award does the Court limit the total award to a doubling of the actual damages.

Id. at 58. That decision is now on appeal to the Ninth Circuit.

## III. Standing

This motion was brought and argued before the deadline for filing claims in this chapter 11 case. The court assumed at that time that Pierce would file a claim, and that his claim would be one of the largest in this case. Indeed, it was his $12 million judgment that precipitated this bankruptcy filing.

However, Pierce declined to file a claim in this case. Before deciding the pending motion on these grounds, however, the court decided that it would benefit from briefing and argument of counsel on this point.[2] In consequence, the court issued an order to show cause why the pending motion should not be denied on these grounds, because the refusal to file a claim substantially circumscribes the standing of a creditor in a bankruptcy case.

The court finds that Pierce did have standing to make this motion, because, when he

---

[1] Pierce brings this motion in his capacity as trustee for the Bettye B. Marshall Living Trust, J. Howard Marshall, II Marital Trust Number Two, and E. Pierce Marshall Family Trust ("the trusts").

[2] Pierce objects to the court's issuance of an order to show cause to address this issue. Apparently he thinks that the court should have decided it without the benefit of briefing by counsel. The court disagrees. Further, the outcome of the show cause hearing itself shows the wisdom of the court's decision to have counsel brief this issue.

2

made the motion, he was a creditor listed on the debtors' schedules, and the deadline for filing a claim had not yet arrived. The court assumes without deciding that Pierce continues to have standing as to this issue, notwithstanding his failure to file a claim. The order to show cause is discharged.

### IV. REASSIGNMENT

There is no doubt that this case is related to the Vickie Lynn Marshall case. Both cases arose out of the disposition of the assets of J. Howard II, the father of Pierce and Howard and the husband of Vickie. Vickie filed her chapter 11 case because she had not received any assets from her husband's estate to support her expensive living style, and her own income was insufficient. After Pierce filed a claim in her case, she filed a counterclaim which resulted in the outstanding district court judgment for $88.6 million (half of which is punitive damages). Howard moved to intervene in that litigation, but the motion was denied in favor of having that dispute resolved in the Texas probate case.

Howard contested the J. Howard II probate case in Texas, and lost an attorney's fee award to Pierce in an amount now exceeding $12 million. Pierce has received all of the J. Howard II inheritance, which now is probably worth more than $2 billion, and is trying to protect this inheritance. Were it not for this complex relationship among the Marshalls, and the prior litigation in Vickie's case in this court, this motion for recusal or reassignment would never have been made.

Neither Bankruptcy Rule 1015(b)[3] nor Local Rule 1015-2[4] exhausts the ways in which cases can be related. Each of these rules lists some of the more common ways that the business relations of two or more entities may be sufficiently connected to have specific consequences. Rule 1015(b) authorizes the administrative consolidation of certain related entities. Local Rule 1015-2 requires the disclosure of certain related cases, but makes no provision as to the consequences resulting from the disclosure.

A court has broad discretion in interpreting and applying its local rules and general orders regarding assignment of cases. *United States v. DeLuca*, 692 F.2d 1277, 1281 (9th Cir. 1988). A federal court's general order for assignment "is a housekeeping rule for the internal operation of the . . . court which has a large measure of discretion

---

[3]Rule 1015(b) provides in relevant part:

If a joint petition or two or more petitions are pending in the same court by or against (1) a husband and wife, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, the court may order a joint administration of the estates.

[4]Local Rule 1015-2(a) provides:

Cases shall be deemed "related cases" for the purposes of this Local Bankruptcy Rule if the earlier case was pending at any time within 6 years before the filing of the new petition, and the debtors in such cases:
(1) Are the same;
(2) Are spouses or ex-spouses;
(3) Are "affiliates," as defined in 11 U.S.C. § 101(2), except that § 101(2)(B) shall not apply;
(4) Are general partners in the same partnership;
(5) Are a partnership and one or more of its general partners;
(6) Are partnerships that share one or more common general partners; or
(7) Have, or within 180 days of the commencement of either of the related cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).

3

in interpreting and applying it." *United States v. Torbert*, 496 F.2d 154, 157 (9th Cir. 1974).

In this court, a judge is assigned to a case at the moment that the case is filed. A chapter 11 case[5] is assigned in random fashion to a judge in the division where the case is filed, unless the case is related to another case. Where a related case has been assigned to a judge still sitting in a division of the court, the new case is typically assigned to the same judge.

Thus, there are two routes by which I may have been assigned this case.[6] First, I may have received it pursuant to the random selection process, the "luck of the draw." Second, the clerk's office may have decided that this case is related to the Vickie case.

If the clerk's office assigned the case to this court because it was related to the Vickie case, that assignment was entirely proper. The purpose of assigning related cases to the same judge is to promote judicial efficiency and to avoid the necessity of a new judge learning a complex factual scenario from the beginning. That goal is certainly promoted in this case. As movant's own brief states on the very first page: "[T]his court is familiar with the parties, and with the probate proceedings from which the trusts' claim against Howard arises . . . ."

The facts in these related cases are extremely complex. The record in the Vickie case is one of the largest in the history of this court. The district court took some 42 pages just to state the relevant facts in its opinion on its *de novo* review of this court's decision in the Vickie case. *See* 275 F.3d at 8-50. If ever there were compelling grounds for finding that cases are related, such grounds exist in these cases.

## V. RECUSAL

As an alternative to reassignment, Pierce moves this court to recuse itself from this case. In support of allegations of bias, Pierce cites the court's adverse rulings in Vickie's case, comments from the bench during a trial in that case, and articles in the press.

The governing statute on recusal states in pertinent part: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455 (a)(2003). The standard for determining whether a judge should recuse himself or herself under this section is, "[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be reasonably questioned." *United States v. Hernandez*, 109 F.3d 1450, 1453 (1997). While the law no longer requires extra-judicial sources of bias to warrant recusal, the standard for recusal based solely on *judicial* conduct is extremely high, and is found only in the "rarest of circumstances." *Liteky v. United States*, 510 U.S. 540, 551 (1994). It must be "so extreme as to display a clear inability to render a fair judgment." *Id.*

Movant's reading of case law errs in applying the standard for recusal. Courts have been rightfully reluctant to permit litigants to claim that judicial conduct itself appears improper, absent behavior so extreme as to be considered unjudicial. It is settled law that adverse judicial rulings alone do not constitute a valid basis for recusal based on alleged bias or partiality. *See, e.g., Liteky* at 556; *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983) (a judge who had accepted an invalid guilty verdict in the first trial need not recuse himself from the second); *see also United States v. Studley* 783 F.2d 934, 939-40 (9th Cir. 1985) (recusal not warranted where a litigant had filed a lawsuit against the judge and engaged in leafleting activities against him).

The *Liteky* court also held that judicial remarks that are critical, disapproving of, or even hostile to counsel do not ordinarily support a bias or partiality challenge. It is expected that a judge will form opinions during the trial, and may become "exceedingly ill disposed towards the defendant who has been shown to be a thoroughly reprehensible person." Even "expressions of impatience, dissatisfaction, annoyance, and even anger" are emphatically not grounds for recusal. *Liteky* at 555-556.

Here, the adverse judgment in the

---

[5] In the past, but not at the present time, chapter 13 cases filed in the Los Angeles division have been assigned by a different system.

[6] I first learned of this case was assigned to me when I received a copy of the petition several days after the filing.

4

adversary proceeding in the Vickie case does not create a basis for recusal. Neither the magnitude of the award nor the inclusion of punitive damages warrants recusal.

Principally Pierce's recusal motion relies on the discovery sanctions that this court imposed on him in the Vickie case. He does not deny that he refused to produce the documents that gave rise to those sanctions. Indeed, in preparation for the trial *de novo* in the district court, he produced "several hundred" boxes of additional documents. *See* 275 B.R. at 10. His remedy for these sanctions lies in the appellate courts, where that case is now pending. In this case he starts with a clean slate as to discovery (if any arises with respect to him).

In addition, Pierce calls particular attention to two remarks by the court in the Vickie case: (1) characterizing the defendant as having "extremely dirty hands," and (2) stating that Pierce's attorneys were making the litigation "look like World War III." The first comment occurs in the court's findings of fact upon which it denied a stay pending appeal. Findings of fact, based on the record before the court, are simply not grounds for recusal. Second, the reference to "World War III" was first made by Pierce's own counsel and merely repeated by the court. These comments do not approach the high degree of antagonism that would make fair judgment impossible.

Movant also provides several newspaper and magazine articles which supposedly characterize this court as hostile to his claims. The characterizations of newspaper articles and journalists are not grounds for recusal.

Finally, the issue of recusal is circumscribed by the limited appearance that Pierce will likely make in this case. Pierce has filed no proof of claim, and acknowledges that he will receive no distribution under any reorganization plan that this court might approve. Thus, there is little likelihood of any live testimony from him in this case.

The court finds that Pierce's motion for recusal, which is based entirely on this court's prior judicial conduct, does not present the "rarest of circumstances" where recusal is appropriate.

## V. CONCLUSION

The court concludes that grounds for recusal or reassignment of this case have not been shown. The motion is denied in all respects.

Dated: March 27, 2003

Samuel L. Bufford
United States Bankruptcy Judge

5

# CERTIFICATE OF MAILING

I certify that a true copy of this AMENDED OPINION ON RECUSAL AND REASSIGNMENT was mailed on **MAR 31 2003** to the parties listed below:

U.S. Trustee Office
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

Chambers Law Firm
Jeffrey W. Chambers
6440 N. Central Expressway, Ste. 416
Dallas, TX 75206

J. Howard Marshall, III
Ilene Marshall
300 S. Orange Grove Blvd., #7
Pasadena, CA 91105

David L. Neale/Anne E. Wells
Levene Neale Bender Rankin et al.
1801 Avenue of the Stars, Ste. 1120
Los Angeles, CA 90067

Bingham McCutchen, LLP
Julia Frost-Davies
Rheba Rutkowski
Andrew J. Gallo
150 Federal Street
Boston, MA 02110

Bank of America
P. O. Box 35140
Louisville, KY 40232-5140

Mellon Bank, N.A.
2 Mellon Bank Center, Room 875
Pittsburgh, PA 15259

Bingham McCutchen, LLP
G. Eric Brunstad, Jr.
One State Street
Hartford, CT 06103-3178

Bingham McClutchen, LLP
Matthew A. Lesnick
355 S. Grand Ave., Ste. 4400
Los Angeles, CA 90071-6400

DATED: **MAR 31 2003**

_____
DEPUTY CLERK

6