

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# FOR PUBLICATION

| | |
|---|---|
| In re: ) | Case No. LA 02-30769 SB |
| ) | |
| **J. HOWARD MARSHALL** ) | |
| et ux. ) | CHAPTER 11 |
| ) | |
| Debtors. ) | |
| ) | OPINION ON |
| ) | PLAN CONFIRMATION |
| ) | AND MOTION TO DISMISS |
| ) | (NON-CONSTITUTIONAL ISSUES) |
| ) | |
| ) | DATE:   May 23, 2003 |
| ) | TIME:   10:00 A.M. |
| _____ ) | CTRM.:  1575 (Roybal) |

1

## I. Introduction

In this case Pierce Marshall, acting as trustee for three family trusts (collectively referred to as "Pierce"), opposes confirmation of the chapter 11[1] plan proposed by his brother J. Howard Marshall, III ("Howard") and his wife Ilene O. Marshall. Pierce also moves to dismiss the case. However, Pierce has declined and refused to file a claim in this case.

The court finds that this bankruptcy case was filed and prosecuted in good faith and for a proper purpose, notwithstanding minor discrepancies or inaccuracies in the debtors' schedules. The court further finds that the plan meets the requirements of good faith and the best interests of creditors.

## II. Relevant Facts

The debtors filed their chapter 11 petition on July 23, 2002. This was the eve of a hearing in a Texas court where Pierce sought an order requiring the debtors to transfer substantially all of their assets to Texas in order to satisfy a judgment in the Texas probate case of their father J. Howard Marshall II ("J. Howard"). The judgment, which was then on appeal, was for $11 million plus ten percent interest and costs. By the bankruptcy filing date this debt totaled more than $12 million.

Fifteen days after filing their petition, the debtors filed their schedules, which they amended thirty days thereafter. As amended, their schedules showed that the debtors possessed assets worth $13,138,311.38 and liquidated debts of $13,914,112.39. In addition to the valued assets, the schedules disclosed interests in a revocable family trust and claims made in the probate estate of Howard's father J. Howard. The schedules also disclosed an interest in the Eleanor P. Stevens Irrevocable Gift Trust ("the Stevens Trust"), a gift from their mother which was described in detail in a full-page exhibit to Schedule C. In addition to the quantified debts, the schedules listed nonpriority debts in an unknown amount owing to Wells Fargo Bank Texas, the City of Pasadena, a Dallas law firm and the Marshall Museum & Trust.

It appears that the debtors calculated that they were owed more from the J. Howard estate than they owed to that estate (including any debt owing to Pierce). In consequence, the interest in the decedent estate was listed as an asset rather than a liability, notwithstanding the outstanding $12 million judgment owing to Pierce.

In addition to the $12 million judgment, Howard had been named as a defendant in a $5 million lawsuit in Louisiana. Furthermore, Pierce's lawyer had also sent a letter to Howard's lawyer on May 20, 2002 providing substantial detail for another claim against Howard in an amount exceeding $100 million.

In contrast to the debtors' financial status, Pierce inherited virtually all of the assets of their father J. Howard, who was said to be the richest man in Texas. These assets are worth perhaps $2 billion today. Howard inherited nothing from his father, and is entitled to only a comparatively small amount from the Stevens trust.

The court set a claims bar date of November 15, 2002. Pierce declined to file a proof of claim in this case, either on his own behalf or on behalf of his family trusts.

The debtors filed a plan of reorganization that assumed that Pierce would file his $12 million claim. After Pierce failed to file a timely claim, the debtors amended their plan to pay in full all of their creditors except for Pierce. The plan as amended will discharge Pierce's unfiled claim for more than $12 million. Pierce has objected to the confirmation of the plan as amended.

On December 13, 2002 Pierce filed his motion to dismiss this case. After several continuances agreed to and sought by the parties, the court heard oral argument on the dismissal motion on April 22, 2003. On April 16, 2003, the debtors filed their first amended chapter 11 plan, to which Pierce objected. After oral argument on May 23, 2003, the court took these matters under submission.

## III. Standing

Under sections 1109(b) and 1112(b), any "party in interest" may "raise and may appear and be heard on any issue in a case under this chapter." In addition, any "party in interest" may file a motion to dismiss a chapter 11 bankruptcy case for cause. A scheduled creditor who has failed to file a proof of claim remains a "party in interest" with standing for a motion to dismiss.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (West 2003) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

2

See *Johnston v. JEM Development Co. (In re Johnston)*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992) (a creditor is a "party in interest" under §1112(b) regardless of status of claim); *Gaudio v. Stamford Color Photo (In re Stamford Color Photo, Inc.)*, 105 B.R. 204, 206-07 (Bankr. D. Conn. 1989); *but see In re Abijoe*, 943 F.2d 121,125 (1st Cir. 1991) (a determination that a claim is meritless, or a formal disallowance of that claim, would act to deprive a creditor of standing to move to dismiss).

Under § 1109 (b), any "party in interest" may also object to a debtor's chapter 11 reorganization plan. Although Rule 3003(c)(2) states that "any creditor who fails [to file a proof of claim] shall not be treated as a creditor with respect to such a claim for the purposes of voting and distribution," Pierce is still a "party in interest" for the purpose of objecting the plan. Thus, even though Pierce may not vote on the plan or receive a distribution under the plan, the court finds that he has standing to object to debtors' chapter 11 plan and to make his motion to dismiss the case.

### IV. Plan Confirmation

Pierce makes both statutory and constitutional objections to the confirmation of the chapter 11 plan proposed by debtors. In this opinion the court takes up the statutory objections. The constitutional issues are addressed in a separate opinion.

### A. Relevant Statutory Requirements

Section 1129(a) specifies thirteen requirements that a chapter 11 plan must satisfy to qualify for confirmation.[2] The debtor has the burden of proof on each of these issues. *See, e.g., In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2002).

In his objection to confirmation of the debtors' chapter 11 plan, Pierce contends that the plan does not meet two of the statutory requirements. First, he argues that the plan does not meet the "good faith" requirement of § 1129(a)(3). Second, he argues that it does not meet the "best interests of creditors," as required by § 1129(a)(7)

### 1. Good Faith

Section 1129(a)(3) requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law." A chapter 11 plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the bankruptcy code. *See Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002). In determining whether a debtor has acted in good faith in proposing a reorganization plan, the court must take into account the totality of the debtor's circumstances. *See id.; Jorgensen v. Federal Land Bank (In re Jorgensen)*, 66 B.R. 104, 108-09 (9th Cir. B.A.P. 1986).

Pierce cites six published opinions in support of his contention that the debtors have proposed their chapter 11 plan in bad faith.[3] The court finds these opinions unhelpful in this case. This is not surprising, however, because the good faith evaluation must be made on a case by case basis. *See Sylmar Plaza*, 314 F.3d at 1075; *Jorgensen*, 66 B.R. at 108-09. Thus this court must make its own independent evaluation of the debtors' good faith for the purpose of plan confirmation.

Part of the good faith analysis is that the plan must deal with the creditors in a fundamentally fair manner. *See, e.g., Jorgensen*, 66 B.R. at 108-09. However, a chapter 11 debtor has no duty of fairness to a creditor who has refused to file a claim in the case. In addition, a debtor need not consider every feasible alternative form of plan, so long as the proposed plan meets the requirements of § 1129(a). *See In re General Teamsters, Warehousemen & Helpers Union Local 890*, 225 B.R. 719, 729 (Bankr. N.D. Cal.

---

[2] Section 1129(b), which is not applicable in this case, specifies additional requirements for confirming a chapter 11 plan that is confirmable except that it does not receive sufficient creditor acceptance as required by § 1129(a)(8).

[3] *In re Chinichian*, 784 F.2d 1440 (9th Cir. 1986) is a chapter 13 case, where the applicable considerations are altogether different. Two cases, *In re Silberkraus*, 253 B.R. 890 (C.D. Cal. 2000), and *In re Jesus Loves You, Inc.*, 46 B.R. 37 (Bankr. M.D. Fla. 1984), deal with bad faith in filing chapter 11 petitions and not bad faith in chapter 11 plans, which is a different issue. The facts in the other three cases, *In re Corey*, 892 F.2d 829 (9th Cir. 1989), *Sylmar Plaza*, and *In re Madison Hotel Assocs.*, 749 F.2d 410 (7th Cir. 1984), provide no support for the bad faith claim in this case.

3

1998).

Pierce contends that the debtors lack good faith in proposing their chapter 11 plan because (1) the debtors are solvent and thus capable of paying all of their debts in full, (2) after filing their case, the debtors made misrepresentations to the court and engaged in misconduct, (3) the proposal to pay all debts in full except for the Texas judgment demonstrates that the purpose of the plan is to discharge the Texas judgment, and (4) the debtors commenced this case for the improper purpose of avoiding a supersedeas bond.

### a. Insolvency

Pierce maintains that the debtors did not act in good faith because they are solvent. However, under Ninth Circuit case law a chapter 11 debtor is not required to be insolvent to propose a plan in good faith. The Ninth Circuit held in *Sylmar Plaza* that insolvency is not a prerequisite to a finding of good faith under § 1129(a)(7). *See* 314 F.3d at 1074. In that case the court affirmed the confirmation of a chapter 11 plan that provided for interest to the objecting unsecured creditor at its non-default rate (instead of the default rate), which was lower than the rate of interest paid under the plan to other unsecured creditors.

Moreover, when the debtors filed their chapter 11 petition, Howard faced litigation that, if lost, would certainly render him insolvent. He had been named as a defendant in a $ 5 million lawsuit in Louisiana shortly before the bankruptcy filing. In addition, he faced Pierce's judgment of $11 million (plus 10% interest that had already accrued for two years) and the threat of a $100 million lawsuit that Pierce had made on May 20, 2002. Thus Howard had reason to believe the threat of ruinous litigation was real. This is the sort of financial circumstance that properly lead debtors to contemplate a bankruptcy filing. Pierce alleges that Howard is solvent but has manipulated the value of his assets to appear insolvent through a pattern of undervaluation and omission. The court finds that any attempt to appear insolvent, even if it occurred, is irrelevant in this case. *See id.* at 1074-75.

Insofar as Pierce's good faith objection to plan confirmation is based on these grounds, the court gives it no weight.

### b. Misrepresentation of Asset Values

Pierce contends that the debtors submitted misleading and false information to the court and to creditors by deliberately undervaluing their assets in amended Schedule C, their schedule of assets.

Pierce agrees with the debtors that their liquidated liabilities were $13,914,112 when they filed this chapter 11 case. The parties disagree, however, on the value of the debtors' assets at that date. The debtors' Schedule C reflects $13,138,311 in valued assets on that date. Subtracting the exempt property, the debtors' liquidated liabilities exceeded their scheduled and valued assets by $607,901.

Pierce contends that the debtors misstated the value of their assets to make it appear that they were insolvent. Pierce contends that the debtors' assets were worth $17,928,869 on that date, and that the value of their assets exceeded their liabilities by $3,846,857. Pierce expects a chapter 11 schedule of assets to provide sufficient information for the court, as well as the parties in interest, to determine whether a debtor is solvent.

The court finds that the schedule of assets cannot carry so much freight. Its purpose in a chapter 11 case is rather limited. Unlike a chapter 7 case, it does not serve to give notice to a trustee of assets that the trustee needs to take possession of and sell. *See* § 704(1). Neither does it give notice to the United States Trustee that a chapter 7 debtor may belong in chapter 13 to give creditors a larger recovery. *See* § 707(b).

The principal purpose of the schedules in a chapter 11 case is to inform creditors of the nature of the debtor's assets and liabilities. As Collier states:

> Their purpose is to give interested parties enough information to decide whether they want to engage in further inquiry, but minor errors that do not result in giving a deceptive impression or other prejudice should not be the basis for limiting the debtor's rights.

9 COLLIER ON BANKRUPTCY ¶ 1007.03[1] (Alan N. Resnick & Henry J. Sommer, eds., 2003).

Pierce's principal complaint is that the debtors failed to assign a value to their interest in the Eleanor Stevens Gift Trust Debenture. Pierce asserts that the debtors should not have listed as

4

"unknown" the value of Howard's $6,000,000 trust, which Pierce claims had a fair market value of $3,583,375 on September 4, 2002. The court is not persuaded. The debtors devoted an entire page of amended Schedule C to a description of Howard's interest in this trust debenture.[4] This description gave Pierce and other creditors a wealth of information about this asset, including the amount of the debenture, the monthly payments to Howard, and the terms of the possible payment of the principal to Howard. This disclosure was clearly sufficient for the creditors to inquire further if they had any interest. The court finds that this asset was adequately disclosed, and that no weight should be given to the lack of quantification of its value. See, e.g., Cusano v. Klein, 264 F.3d 936, 946-47 (9th Cir. 2001) (song rights listed as "unknown" in value were adequately disclosed).

Pierce also complains that the debtors gave substantially different financial statements not long before filing their bankruptcy case. While the debtors have given an explanation for the differences, this is a factor that may be entitled to some weight in this case.

Pierce further contends that the debtors failed to list two assets in the amended schedules. The failure to list assets is a more serious matter than inaccuracies in the valuation of listed assets. The failure to list an asset prevents creditors from making inquiries into the status or value of the asset. See, e.g., Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 785 (9th Cir. 2001).

One of the unlisted assets is the debtors' interest in Snow Summit Ski Corp. However, debtors did list this asset seven months later in their disclosure statement as worth $34,000 on March 31, 2003. In an interrogatory answer, Howard elaborated that he owns 200 shares in the Snow Summit Ski Corp., which were worth approximately $175-$180 a share. He explained that, although the corporation is publicly traded, it is not listed on any stock exchange, and he was only able to value the stock because he is a member of the board of directors. In this case, the value of this stock is de minimis.

Pierce also asserts that Howard failed to schedule Citibank accounts containing a combined amount of $186,458. However, the only evidence before the court that these accounts even exist is a report of Pierce's expert referring to the accounts. No other evidence of the accounts has been presented. The court finds this an insufficient basis to determine that the accounts exist.

Pierce also complains in substantial detail that the debtors' listing in amended Schedule C of their publicly traded stock portfolio was made as of July 16, 2002, a date when one of the important assets, the debtors' Immunex stock, was in the middle of an acquisition and was not publicly traded. While amended Schedule C attributed no value to the stock, by September this investment was worth more than a million dollars, according to Pierce.

However, the stock itself was clearly listed in the schedule. The court finds that this disclosure was sufficient. It is not important that a debtor give an up to date valuation of a stock holding as of the date of an amended schedule under these circumstances, in light of the relative lack of importance of asset valuations in a chapter 11 case.

Pierce also makes much of the fact that the original Schedule C, filed fifteen days after the petition, contained even less disclosure than amended Schedule C. The debtors amended this schedule a mere thirty days after it was filed. The amended schedule controls for purposes of the matters before the court. The court finds no bad faith on this issue, given the prompt amendment of Schedule C, and gives no weight to this argument.

The court finds that the remaining alleged inaccuracies in the debtors' valuation of assets are immaterial in this case. The assets are each identified, so that creditors can inquire further if they so desire.

### c. Improper Purpose – Discharge of Pierce's Claim

Pierce argues that the debtors' proposal to pay all of their debts in full except for Pierce's Texas judgment demonstrates that this case was filed for an improper purpose. According to Pierce, the debtors' plan is not proposed in good faith because its sole purpose is to frustrate the Texas state court action and to eliminate a debt that the debtors can certainly pay, but do not so desire.

However, the opportunity to discharge Pierce's potential claim arose only when Pierce declined to file his claim. Pierce's failure to file a proof of claim relieves debtors of any obligation under Rule 3003(c)(2) to include Pierce as a

---

[4] According to Schedule C, Ilene has no interest in the trust.

5

creditor to whom they must provide a distribution under their chapter 11 plan.

Pierce has brought upon himself the prospect of having his potential claim discharged by failing to file the claim in this case. If Pierce had wanted his claim to be paid, he would have filed it. In fact, the first plan proposed in this case, which was filed before the claims deadline, assumed that Pierce would file a timely claim, and that the plan would have to accommodate it. The plan was only amended several months after Pierce declined to file a claim and thus waived any right to be paid from the assets of the bankruptcy estate.

As to the creditors who did file claims and chose to participate in the chapter 11 process, the court finds that the plan is eminently fair and reasonable. The plan proposes to pay their claims in full. They are entitled to nothing more, and creditors usually get far less in a chapter 11 plan. This result is certainly consistent with chapter 11.

### d. Good Faith – Totality of Circumstances

Pierce also complains about the debtors' "lavish postpetition spending" in their reorganization plan.[5] However, much of the postpetition spending involves the expenses for bankruptcy counsel in this case. The preliminary budget filed with the court in connection with the first status conference in this case shows expected expenditures of $74,112 per month. But $40,000 of this sum is for legal expenses and income taxes, which certainly do not improve the debtors' standard of living. The more modest $34,112 remaining after deleting these two categories of expense is not unreasonable, in the court's view, given the 100% plan pending in this case.

In summary, the court finds that Pierce's complaints about the disclosure of assets on amended Schedule C are largely minor. The most important deficiency was the debtors' failure to list their interest in Snow Summit Ski Corp. Certainly this was improper. If the debtors failed to list two accounts holding nearly $200,000, this also was improper. However, the court is not persuaded that the omission of these assets on a seven-page list of assets totaling some $13 million and the differing financial statements show sufficient bad faith to merit denial of confirmation of the chapter 11 plan or the dismissal of this case. The court finds that the valuation of the debtors' assets stated in the amended Schedule C does not give a deceptive impression of their assets, and that it has not otherwise prejudiced creditors.

### 2. Best Interests of Creditors

Section 1129(a)(7) requires that a chapter 11 plan meet the best interests of creditors and interest holders. This is one of the cornerstones of chapter 11: a chapter 11 plan must treat non-consenting creditors and interest holders at least as well as they would be treated in a liquidation under chapter 7. See 7 COLLIER at ¶ 1129.03[7].[6]

Pierce argues that the plan cannot be confirmed because the creditors would receive at least as much under chapter 7 as they will under the plan. This objection has no merit for two reasons. First, § 1129(a)(7) applies only to those creditors who vote against the plan. Section 1129(a)(7)(A)(i) expressly excludes creditors who have accepted the plan from those entitled to claim the benefit of this provision. In this case, every creditor is presumed to have voted in favor of the plan. Pierce did not vote on the plan, because he failed to file a claim. There is no creditor who has voted against the plan, who can invoke the Best Interest of Creditors test. For this reason alone § 1129(a)(7) is fully satisfied.

Second, § 1129(a)(7) does not require that a creditor be treated better under a chapter 11

---

[5] In addition, Pierce complains of an artificial impairment of creditors in the chapter 11 plan. This feature has disappeared in the amended plan.

[6] Section 1129(a)(7) provides in relevant part:

> With respect to each impaired class of claims . . . –
>   (A) each holder of a claim . . . of such class–
>       . . .
>       (ii) will receive . . . under the plan on account of such claim . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive . . . if the debtor were liquidated under chapter 7 of this title on such date . . . .

plan than in a chapter 7 liquidation. It only requires that a creditor receive "not less than the amount" that the creditor would receive under a chapter 7 liquidation. Debtors' plan is a 100% plan: it provides for the payment of all filed claims in full. Debtors' liquidation analysis also shows that these creditors would be paid in full if the estate were liquidated under chapter 7. A creditor who is paid in full under a chapter 11 plan does not receive less than that creditor would receive in a chapter 7 liquidation. Under the plan in this case, no creditor will receive less than in a chapter 7 liquidation.

Pierce contends that the plan violates § 1129(a)(7) because, as the trustee for the three family trusts, he would receive a 100% distribution under a chapter 7 liquidation, but he will receive nothing at all under the chapter 11 plan. This contention is simply false.

Section 1129(a)(7) has no application to a creditor who refuses to file a claim. Pierce declined and refused to file a claim on behalf of any of the trusts. Rule 3003(c)(2) provides that a disputed creditor who fails to file a claim in a chapter 11 case is not treated as a creditor with respect to that claim for the purposes of voting and distribution. Under a chapter 7 liquidation Pierce would also receive no distribution. The plan does not provide him any less. Thus the plan meets the requirements of § 1129(a)(7).

### V. Motion to Dismiss

Separately from his opposition to confirmation of the proposed chapter 11 plan, Pierce moves to dismiss this case on the grounds that it was filed in bad faith. This motion, originally filed on December 13, 2002, was continued at the request of the parties to conduct discovery. The motion was finally heard on April 22, 2003, a month before the plan confirmation hearing.

A chapter 11 case may be dismissed "for cause" under § 1112(b). It is settled law that a bad faith filing is cause for dismissal. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994).[7] The test is whether a debtor is attempting to deter and harass creditors unreasonably, and not attempting to effect a speedy, efficient reorganization on a timely basis. *Id.* Good faith "depends upon an amalgam of factors, and not upon a specific fact." *See id.; In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). "Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *Arnold*, 806 F.2d at 939. Although case law enumerates specific "causes" for which a case may be dismissed under § 1112(b), the good faith inquiry is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization. *See, e.g., Arnold* at 939; *Meadowbrook Investors v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 505 (9th Cir. BAP 1983) ("A petition filed in bad faith may manifest an intent to cause hardship or to delay creditors by resort to the chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.") In all cases, the analysis is based on the totality of the circumstances, and not a bright line rule.

The Second Circuit has cautioned that the good faith analysis must be done with care:

> Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation. Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure, and the concept of abuse of judicial purpose.

*Baker v. Latham Sparrowbrook Assocs. (In re Cohoes Indust. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991) (citations omitted) (finding that

---

[7] Pierce claims that *Marsch* is binding precedent on this court. Because the case comes from the Ninth Circuit, the point of law is certainly true. However, the court held that a bankruptcy court's dismissal of a case on the grounds of bad faith is only reviewable for abuse of discretion. *See id.* at 828. *See also Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*,

---

30 B.R. 503, 504-05 (9th Cir. BAP 1983) (denial of motion to dismiss on bad faith grounds is reviewable only for abuse of discretion).

7

chapter 11 bankruptcy petition was not frivolous when it was filed). Similarly, Judge Posner, writing for the Seventh Circuit, has stated:

> It is not bad faith to seek to gain an advantage from declaring bankruptcy--why else would one declare it? One might have supposed that the clearest case of bad faith would be filing for bankruptcy knowing that one was not bankrupt, but the Bankruptcy Code permits an individual or firm that has debts to declare bankruptcy even though he (or it) is not insolvent, (these are usually cases of impending insolvency). The clearest case of bad faith is where the debtor enters Chapter 11 knowing that there is no chance to reorganize his business and hoping merely to stave off the evil day when the creditors take control of his property.

*In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) (citations omitted).

In his motion to dismiss, Pierce raises the following arguments in favor of a finding of a bad faith filing: (1) the debtors are solvent, (2) the debtors have purposely concealed assets and/or misled the court as to the value of the scheduled assets, (3) the timing of the petition was merely a litigation tactic to prevent an enforcement hearing on the Texas judgment, (4) the debtors filed their chapter petition merely to avoid posting a supersedeas bond in the Texas case, and (5) the debtors are not able to propose a confirmable chapter 11 plan in this case.

### 1. Confirmability of Reorganization Plan

Perhaps the most compelling grounds for denying a motion to dismiss grounded on bad faith is the determination that a reorganization plan qualifies for confirmation. A debtor's showing that a plan of reorganization is ready for confirmation essentially refutes a contention that the case is filed or prosecuted in bad faith.

Indeed, one of the confirmation requirements is that "the plan must be proposed in good faith and not by any means forbidden by law." *See* § 1129(a)(3). The court has found that this requirement is met in this case.

Admittedly, meeting the § 1129(a)(3) good faith requirement does not necessarily dispose of all issues relating to whether a case is filed in bad faith. However, such a determination is entitled to great weight in making such a determination. Where a confirmable chapter 11 plan is before the court at essentially the same time as a dismissal action based on bad faith filing, the good faith finding for confirmation (even though based on different factors) essentially disposes of the bad faith filing issue.

Case law discussing bad faith filing in the chapter 11 context rarely arises in the context of plan confirmation. Usually a motion to dismiss for bad faith is brought long before a reorganization plan comes before the court. In this case the motion to dismiss based on bad faith was made somewhat early in the case, nearly five months after the case was filed. However, by consent the parties postponed the hearing on the dismissal motion until only a month before the plan confirmation hearing, at which time the court took the motion under submission pending a determination of the confirmability of the plan.

In *In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002), a case much weaker than this case, the court denied a motion for relief from the automatic stay brought on the grounds that the chapter 11 case was filed in bad faith. The court reached this result even though the debtor had no income, no employees, and its sole asset was an empty and derelict residential building acquired shortly before a scheduled foreclosure. The court found there was no bad faith providing "cause" for relief from stay under § 362(d)(1) because the debtor carried its burden of persuasion that it had a valid purpose of confirming a chapter 11 plan, and that there was a reasonable possibility of successful reorganization within a reasonable time. *See id.* at 842. In that court's view, "the exercise of a statutory right or remedy [such as filing a chapter 11 bankruptcy case] should rarely, if ever, be said to be in bad faith." *Id.* at 844. The court further stated:

> Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtors seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible, legitimate

8

reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

*Id.* at 844 (quotation omitted).

Notably, unlike this case, in *68 West 127th Street* confirmation was not imminent when the court heard the relief from stay motion. The critical test for bad faith, in that court's view, is whether on the filing date there is no reasonable likelihood that the debtor intends to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy. *See id.* at 846.

Applying the *Marsch* test, this court finds no cause to dismiss this chapter 11 case. Pierce has not been deterred from pursuing the assets of his brother. The gravity of the situation for Pierce has not been created by his brother Howard's petition, but by Pierce's failure to file a proof of claim, which now raises the prospect that his $12 million judgment will be discharged.

### 2. Solvency

The solvency issue need not detain us long, because insolvency is not a requirement for a chapter 11 filing. Insolvency is not even a requirement for plan confirmation under the explicit "good faith" requirement of §1129(a)(3). *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074-75 (9th Cir. 2002) ("The important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.") Even assuming *arguendo* that the debtors are solvent, Pierce's claim could have been satisfied through the reorganization process in this court.

### 3. Concealed or Undervalued Assets

The issue of concealed or undervalued assets is principally relevant to whether the chapter 11 plan should be confirmed. There is no evidence of the sort of wholesale fraud that might give rise to a finding of bad faith on these grounds. The court has already discussed in detail Howard's schedule of assets.

### 4. Pending Texas Judgment

Pierce charges that the sole purpose of the chapter 11 plan is to discharge the Texas judgment. The court is not persuaded that this was the sole reason.

Filing a chapter 11 case because of the crushing weight of a judgment is not unusual. *See, e.g., In re Texaco, Inc.*, 254 B.R. 536, 541 (Bankr. S.D.N.Y. 2000) ("Texaco filed under Chapter 11 for the sole purpose of compromising a $10.5 billion judgment.") In all such cases, the debtor seeks to delay creditor action by filing a bankruptcy petition. Indeed, the express purpose of the automatic stay under § 362 is to provide a breathing space for the debtor. The issue of dismissal for cause under § 1112(b) does not arise unless a debtor seeks *unreasonably* to deter or hinder creditors through abuse of the bankruptcy process.

The court finds that, in light of the debtors' other financial difficulties, it was reasonable for them to file for reorganization under chapter 11 immediately before a judgment enforcement hearing that threatened to dissipate most or all of their assets. Nothing in the timing of this case leads this court to conclude that the debtors had an improper purpose in filing this chapter 11 case.

### 4. Supersedeas Bond

It is also not unusual for a debtor to file a chapter 11 petition when faced with an appeal bond that would severely disrupt the debtor's business. This court has seen numerous cases that have been precipitated by unaffordable appeal bonds.

The Ninth Circuit in *Marsch* held that a bankruptcy court did not abuse its discretion in dismissing a case under §1112(b) where a debtor filed a chapter 11 petition solely to avoid posting an appeal bond and the debtor could satisfy the appeal bond or judgment without severely disrupting the debtor's business. *Marsch*, 36 F.3d at 828-29. However, in *Marsch* the Ninth Circuit expressly declined to decide whether bankruptcy laws can be used "to skirt state court procedural rules in this manner." *See id.* at 829.

Pierce also relies on *In re Boynton*, 184 B.R. 580 (Bankr. S.D. Cal. 1995), where the bankruptcy court held that a debtor whose debts consisted almost entirely of an IRS tax deficiency could not use bankruptcy to stay collection and avoid posting an appeal bond, where the debtor had liquid assets sufficient for the bond. However, the court in that case did not find that bad faith was

an easy standard to meet: a finding of bad faith, the court stated, requires both an objective showing of the futility of rehabilitation and a subjective showing of bad faith. See id. at 583. Both are missing in this case.

This case is different from both Marsch and Boynton in other important respects. First, unlike those cases, Howard did not have liquid assets sufficient to post an appeal bond to stay enforcement of the Texas judgment. Indeed, he was not able to obtain an appeal bond at all. The judgment which prompted the debtors' chapter 11 petition is in excess of $12 million, and the appeal bond for such a judgment would substantially exceed that amount. In Texas, the bond for an appeal must be at least the amount of judgment, interest for estimated duration of the appeal, and costs.[8] Texas Rules App. Proc. 24.2(a)(1). By custom, appeal bonds are set at 150% of the judgment, which would be nearly $18 million. Howard did not have sufficient liquid assets to post a bond of this size.[9] Indeed, he was unable to post an appeal bond of $10.4 million, the amount proposed in discussions between his lawyers and Pierce's lawyers.

Second, unlike those cases, the debtors in this case have proposed a viable plan of reorganization that is ready for confirmation. Furthermore, the debtors' proposal would provide a speedy, efficient reorganization on a timely basis. The confirmation hearing took place exactly ten months after the case was filed, and the plan provides for the payment of 100% of all filed claims.

### 5. Amalgam of Factors as to Motion to Dismiss

In summary as to the motion to dismiss, the court finds that the debtors had serious financial problems at the time that they filed this chapter 11 case. In addition to the pending Texas judgment, for which the debtors were unable to post a supersedeas bond, the pending Louisiana litigation and the prospective litigation with Pierce certainly gave the debtors cause for grave financial concern. If successful, the ensuing judgments would have been impossible for the debtors to pay.

The court finds that the debtors' filing of their chapter 11 case in these circumstances did not abuse the bankruptcy process or invoke the automatic stay for an improper purpose. Applying the "amalgam of factors" test, according to the Ninth Circuit standard, the court finds that this case should not be dismissed on bad faith grounds.

### VI. Conclusion

The court concludes that the chapter 11 plan in this case meets the statutory requirements for confirmation, and that the motion to dismiss should be denied. The court addresses separately the constitutional challenges that Pierce makes to the confirmation of the plan of reorganization and in favor of his motion to dismiss.

Dated: August 26, 2003

Samuel L. Bufford
United States Bankruptcy Judge

---

[8] At oral argument, counsel for Pierce indicated that the appeal has been stayed by this bankruptcy case.

[9] Apparently J. Howard III and Pierce were negotiating for $10.4 million as alternate security before the petition date, but J. Howard III failed to secure adequate funding for this bond. In addition, the Texas court had not made the requisite finding under Rule 24.2(b) that a lower bond amount would be permissible.

## CERTIFICATE OF MAILING

I certify that a true copy of this OPINION ON PLAN CONFIRMATION AND MOTION TO DISMISS (NON-CONSTITUTIONAL ISSUES) was mailed on __AUG 27 2003__ to the parties listed below:

U.S. Trustee Office
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

J. Howard Marshall, III
Ilene Marshall
300 S. Orange Grove Blvd., #7
Pasadena, CA 91105

Bingham McCutchen, LLP
Julia Frost-Davies
Rheba Rutkowski
Andrew J. Gallo
150 Federal Street
Boston, MA 02110

Bingham McCutchen, LLP
G. Eric Brunstad, Jr.
One State Street
Hartford, CT 06103-3178

Bingham McClutchen, LLP
Matthew A. Lesnick
355 S. Grand Ave., Ste. 4400
Los Angeles, CA 90071-6400

Robert DeChristofaro, VP
Boston Safe Deposit & Trust Company
One Boston Place
Boston, MA 02108

Chambers Law Firm
Jeffrey W. Chambers
6440 N. Central Expressway, Ste. 416
Dallas, TX 75206

David L. Neale/Anne E. Wells
Levene Neale Bender Rankin et al.
1801 Avenue of the Stars, Ste. 1120
Los Angeles, CA 90067

Bank of America
P. O. Box 35140
Louisville, KY 40232-5140

Mellon Bank, N.A.
2 Mellon Bank Center, Room 875
Pittsburgh, PA 15259

Charles W. Fish
Charles Fish Investments, Inc.
20 Corporate Park, Ste. 400
Irvine, CA 92606

Jean Morris, Esq.
Greenberg Glusker Fields Claman
Machtinger & Kisclla
1245 West Highway 246
Buelton, CA 93427

DATED: __AUG 27 2003__

_____
DEPUTY CLERK